MONTGOMERY COUNTY, MARYLAND *v.*
GEORGE MEANY ET AL.

[No. 498, September Term, 1976.]

*Decided February 4, 1977.*

The cause was argued before THOMPSON, LOWE and MELVIN, JJ.

H. Christopher Malone, Assistant County Attorney for Montgomery County, with whom were Richard S. McKernon, County Attorney for Montgomery County, and Robert G. Tobin, Jr., Deputy County Attorney for Montgomery County, on the brief, for appellant.

Michael T. Nalls and J. Willard Nalls, Jr., with whom were Nalls & Nalls on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

The appellant, Montgomery County, appeals from an order entered by Judge Richard B. Latham, presiding in the Circuit Court for Montgomery County, affirming an order of the Maryland Tax Court, challenging the granting of an exemption from real property taxation to the appellees in the taxable year 1972.

The subject property consists of 47.15 acres, improved by nine buildings, located in the northwest quadrant of the intersection of Maryland Route 650 and Interstate 495 in Montgomery County. It was owned by the Xaverian Brothers (a Roman Catholic order) and had been used as a seminary by them. As a result of this it had been exempt from taxation.

At the end of 1971 the Xaverian Brothers entered into a contract with the AFL-CIO Labor Studies Center, Inc. for the sale of the subject property, contingent upon the purchaser being granted a special exception for the use as an educational institution. This exception was granted on January 11, 1972, subject to the conditions that the number of students would not exceed 250 and that no exterior changes would be made to the buildings. On March 1, 1972,[1] George Meany, et al., trustees for the AFL-CIO Labor Studies Center, Inc. obtained title to the property. On March 8, 1972, a contract was entered into with Maryland Lawn and Landscaping Company to have a caretaker move on the premises and maintain it. A phone was installed. Furniture and equipment were moved on the premises for storage. The

---

1. The actual date of settlement is not clear. There are portions of the record which support March 1, 1972, March 7, 1972, and February 22, 1972.

Center had previously operated a school in Washington, D.C., which it expected to move to the new location, and subsequently did.

On June 14, 1972, the Supervisor of Assessments denied a petition for exemption from real property taxes for the 1972 taxable year claimed under Md. Code, Art. 81 § 9 (8) by the Studies Center. The reason for the denial was that the property was not being used as an educational institution. An appeal to the Appeal Tax Court was filed on June 29, 1972.

The Studies Center entered into a contract with the George Hyman Construction Company for interior demolition of the buildings on the property. This work commenced in November of 1972. On January 9, 1973, the Board of Appeals granted a special exception allowing for renovation and exterior changes to the existing buildings.

The Appeal Tax Court denied the property tax exemption on July 9, 1973, but lowered the assessment $312,200. An appeal was filed in the Maryland Tax Court. On January 17, 1974, Montgomery County's petition to intervene was granted. That Court reversed the prior decision and granted the property tax exemption for the taxable year 1972-73.

Montgomery County appealed that decision directly to the Court of Appeals. By order dated September 10, 1975, the Court of Appeals transferred the case to the Circuit Court for Montgomery County because of that court's jurisdiction over initial reviews of Tax Court's decisions.[2] The case reaches this Court from an affirmance of the exemption by the Circuit Court for Montgomery County.

## I Standing of Intervenor

Initially, the appellees contend that the appellant, originally an intervenor, does not have the legal capacity to appeal the unfavorable tax court decision. We find that it does.

---

**2.** See Shell Oil Co. v. Supervisor, 276 Md. 36, 343 A. 2d 521 (1975) requiring judicial review of a Tax Court decision by a trial court.

In *Montgomery County v. Supervisor of Assessments*, 275 Md. 58, 62-3, 337 A. 2d 679 (1975), The Court of Appeals stated:

> "When the Tax Court permitted the County to intervene, its order made the County 'a party . . . with all rights incident thereto.' As an intervenor, the County acquired rights afforded to original parties:
>
> > 'By the very definition of "intervention" the intervenor is a party to the action. After intervention he is as much a party to the action as the original parties, and to make his rights effectual he must necessarily have the same power as the original parties, subject to the authority of the court reasonably to control the proceedings in the case.' 59 Am.Jur.2d *Parties* § 177 (1971)."

As an intervenor has all the rights as a party and a party has the right to appeal, Montgomery County has the right to appeal.

The appellees rely on *Montgomery County v. One Park North Associates*, 275 Md. 193, 338 A. 2d 892 (1975), in support of their contention that the appeal should be dismissed. In that case, however, the Court made perfectly clear its holding that Montgomery County had no right of appeal was based upon the county not being a party, nor an intervenor, until it filed an appeal to the Circuit Court. *Montgomery County v. One Park North Associates, supra* at 201.

## II Exemption

Whether or not the appellees qualify for the educational exemption is governed by Md. Code, Art. 81, § 9 (8) (1969 Replacement Volume).[3] That section states:

> "(8) *Educational and literary institutions. —* Buildings, furniture, equipment and libraries

---

3. The equivalent portion of the 1975 Replacement Volume is Art. 81, § 9 (e).

owned and used exclusively by educational or literary institutions, no part of the net income of which inures to the benefit of any private shareholder or individual, and the ground not exceeding (outside of any city) one hundred acres in area, appurtenant thereto, and necessary for the respective uses thereof."

There seems to be no Maryland case precisely on the issue of whether land on which buildings are being prepared for use meet the requirement of being actually used by the educational institution.[4] Cases in other jurisdictions are in direct conflict over this question. As expressed in 54 A.L.R.3d 9, 14 & 15 (1974) the rationale behind the two schools of thought is:

"[O]n the other hand, that an intention to make future use of property for exempt purposes may never be realized and the property may be sold or put to a nonexempt use and, even if realized, may be long deferred, the public deriving no benefit during this time from the property and such benefit being the reason for the grant of tax exemption; and, on the other hand, that very frequently it is not possible for all phases of a plan to confer a public benefit to be realized at once, that steps must be taken as they are feasible and as funds permit, that property may become available for acquisition before it is possible to make full use of it or property necessary for a planned use may become unavailable if not acquired in advance of its actual need, that institutions develop and expand and it is prudent to anticipate future needs, especially when acquisition costs in the future may greatly increase, and that the rendition of the desired public benefits by an institution is curtailed

---

4. Although the statute does not seem to require actual use for educational purposes a prior less restrictive statute was so construed by the Court of Appeals in Md. State Fair v. Supervisor, 225 Md. 574, 172 A. 2d 132 (1961). We will so construe the statute under consideration. For a subsequent change see Md. Code, Art. 81, § 9 (e).

and expenditure of funds increased if it is unduly restricted in meeting its future needs. It appears reasonable that the closer future plans come to reality, the greater is the possibility that exemption will be allowed for property held for future use."

In the case of *Bullis School v. Appeal Tax Court,* 207 Md. 272, 114 A. 2d 41 (1955), the Court of Appeals found that a farm purchased for the building of a new school in the indefinite future would not furnish grounds for the exemption. The produce from the farm was used to feed the students and the farm provided a home for the headmaster, but the Court held this of no consequence because these aspects were not necessary for the educational use of the school. It was held that the "authorities generally seem to take the view that the use must be a present one, or at least in immediate prospect." *Id.* at 276.

We think that the recognition in *Bullis School v. Appeal Tax Court, supra,* that the word "use" in the statute encompassed a use in the "immediate prospect" is important. It is evident that the appellees were not required to be conducting classes on the determinative day of the taxable year. The test seems to be whether the institution is in the process of bona fide necessary preparation for its operations through the repair and improvement of the property. *Hedgecroft v. Houston,* 150 Tex. 654, 244 S.W.2d 632 (1951); *Board of Assessment & Revision of Taxes v. Philadelphia Election Co.,* 308 A. 2d 627 (Pa. 1973). To put it another way, the test is whether the property is being used to its fullest extent for educational purposes under the circumstances of the given case.

In the case at bar the appellees purchased the property in March or late February. The evidence supports the finding that the appellees used due diligence in readying the property for its exempt use. Before the institution could perform its public service it had to remodel the property. The land was not simply being held for a future use, but active measures were taken to prepare for the use. Under these circumstances the Tax Court's findings that the use

was an immediate prospect and the property was therefore exempt were supported by substantial evidence and were not arbitrary, capricious or unreasonable. This is the test we must use in reviewing Tax Court decisions. *Supervisor of Assessments of Carroll County v. Peter & John Radio Fellowship, Inc.*, 274 Md. 353, 335 A. 2d 93 (1975).

The appellant cites two areas in which it alleges the Tax Court and Circuit Court founded their decisions on impermissible considerations. It contends that the Tax Court considered statements that the renovation was necessary to conform to fire and health regulations, and the only evidence of this in the record are oral representations of such by attorney for the appellees. There are hearsay statements on the record concerning the building inspections and statements as far back as the opinion of the County Board of Appeals that the appellees would have to make changes in order to conform to these requirements. There was, therefore, evidence before the Tax Court supporting its finding that it was the building inspectors' requirements which were halting progress in the construction. Technical rules of evidence are not applicable in cases before the Tax Court. *Fairchild Hiller Corp. v. Supervisor of Assessments for Washington Co.*, 267 Md. 519, 298 A. 2d 148 (1973). We conclude that there has been no violation of the basic rules of fairness.

Appellant alleges the Circuit Court erred in considering that the subject property was previously exempt. As pointed out by Montgomery County the prior exemption was under a different statute for a different organization. While we do not deem this relevant, we note that this was not the sole basis for the court's decision. Even if it had been, a trial court can be right for the wrong reason. *Loyola Federal Savings and Loan Association v. Galanes*, 33 Md. App. 559, 365 A. 2d 580 (1976).

In a sentence, the appellant, Montgomery County, seeks to inject an issue not presented below that the property in 1972 was titled in the name of trustees rather than the operating corporation, and thus was not exempt under the statute in question. We decline to consider the question under Md.

Rule 1085, and also because there was no argument or citations of authorities in the brief on the question. See *Sarkissian v. Sarkissian*, 32 Md. App. 445, 360 A. 2d 453 (1976).

*Judgment affirmed.*
*Appellant to pay the costs.*